F:\WP51\DOCS\KHENRY\6989.0015\00092796.DOC

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| Mollie Enterprises, Inc. | ) | Case No. 12-20426 |
| | ) | |
| Debtor | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | |
| Brenda Helms, as Trustee | ) | |
| | ) | Adversary No. 15-00034 |
| Plaintiff | ) | |
| v. | ) | |
| Charles Hanson | ) | |
| | ) | |
| Defendant | ) | |

## NOTICE OF FILING

TO:    David L. Kane
       Meltzer, Purtill & Stelle LLC
       300 South Wacker Drive, Suite 3500
       Chicago, Illinois 60606
       (312) 987-9900
       Fax: (312) 987-9854


PLEASE TAKE NOTICE that on the 10th day of March, 2015, I caused to be filed with the United States District Court for the Northern District of Illinois, the Appearance and Answer of Charles Hanson,  a copy of which is attached hereto and hereby served upon you.


Peter G. Swan
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, IL 60035
(847) 432-6900
# 6186883

## CERTIFICATE OF SERVICE

I, Peter Swan, certify I served this notice by mailing copies to the above attorneys of record at the addresses above and depositing the same in the U.S. Mail at the Central Ave. Post Office, by 5:45 P.M. on March 10, 2015.

/s/ Peter G. Swan

F:\WP51\DOCS\KHENRY\6989.0015\00092552.DOC

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MOLLIE ENTERPRISES, INC.,[1] | ) | Case No. 12-20426 (jointly administered) |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |
| BRENDA HELMS, not individually, but | ) | |
| solely as Chapter 7 trustee for Mollie | ) | |
| Enterprises, Inc., | ) | |
| Plaintiff, | ) | Adv. Case No. 15-00034 |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES HANSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND
## AFFIRMATIVE DEFENSES

Now comes the Defendant, Charles Hanson ("Hanson" or "Defendant") by and through his attorneys, Emalfarb, Swan & Bain, and for his answer and affirmative defenses to the adversary complaint, states as follows:

## NATURE OF THIS ACTION

1.      This is an adversary proceeding by the Trustee on behalf of the Estate to recover the sum of approximately $3,530,000.00 from Hanson.

Response:      Admitted

2.      Hanson at all relevant times controlled the Debtor, was the Debtor's sole or majority owner, and was the Debtor's President.

Response:      Admitted as to majority stock ownership in the Debtor and as to being the President of the Debtor, denied as to the legal conclusion that he "controlled" the Debtor.

1

3.    Beginning in or prior to 2002, and continuing thereafter, Hanson caused Debtor to make advances of the Debtor's monies to himself in the aggregate principal amount of at least approximately $2,500,000.00. Hanson has not repaid these monies to Debtor.

Response:    Denied.

4.    Hanson has a legal obligation to repay these monies to Debtor, with interest. As set forth below, Hanson and Debtor had an oral agreement that all monies advanced by Debtor to Hanson would be a loan that Hanson would pay interest on that loan, and that Hanson would repay all amounts due under that loan, including interest, upon demand. Demand was made by Debtor, through the Trustee, on December 17, 2014. Nonetheless, Hanson failed and refused to repay the monies advanced to him by Debtor. Hanson's failure and refusal to repay is a clear violation of his contract with Debtor. It also amounts to a violation of the doctrine of promissory estoppel, unjust enrichment, a violation of the doctrine of account stated, and a wrongful conversion of Debtor's property.

Response:    Denied

5.    In addition, Hanson's transfer of millions of dollars from the Debtor to himself, as well as his refusal to cause Debtor to demand repayment and his refusal to repay these monies, constituted breaches of his fiduciary duties to Debtor, caused Debtor to be unable to pay its debts as they accrued and become insolvent, and caused Debtor's business to fail.

Response:    Denied

6.      Plaintiff therefore brings this action to recover property of the Estate

being wrongfully withheld by Hanson, and to recover damages for Hanson's breaches.

Response:      Denied

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C.§ 1334(b) because it arises under title 11 of the United States Code in

connection with the Debtor's chapter 7 case, *In re Mollie Enterprises, Inc.*, Case No.

12-20426 (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for

the Northern District of Illinois (the "Court").

Response:      Admitted

8.      Venue is proper in this District under 28 U.S.C. § 1409(a).

Response:      Admitted

9.      This proceeding is a core proceeding under 28 U.S.C. §

157(b)(2)(A), (E) and (O), and is related under 28 U.S.C. § 157(c)(1).

Response:      Admitted

10.      This Court has the authority to enter the requested relief pursuant to

Bankruptcy Code § 542(b), Federal Rule of Bankruptcy Procedure 7001(1), and 28

U.S.C. § 157(b)(2)(A),(E) and (O), and/or (c)(1).

Response:      Admitted

## PARTIES

11.      Plaintiff is the duly appointed and qualified chapter 7 trustee of the

Estate of the Debtor, as well as of the jointly administered and substantively

consolidated debtor, Northwest Building Material of Illinois, Inc.

Response:        Admitted

12.    Hanson is a natural person residing at 261 12th Street, Key Colony Beach,

Florida.

Response:        Admitted

13.    Hanson was at all relevant times the sole or majority owner of Debtor.

Response:        Admitted as to being the majority stock holder.

14.    Hanson was at all relevant times the President of Debtor.

Response:        Admitted

## FACTUAL ALLEGATIONS

### A.    This Bankruptcy Proceeding

15.    On May 18, 2012 (the "Petition Date"), petitioning creditors Lafarge
North

America, Inc., New NGC, Inc. and Laborer's Pension Fund filed an involuntary

petition for relief with respect to Debtor under chapter 7 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), with

the Court, commencing the  above-captioned chapter 7 case. An Order for Relief

was entered in the Debtor's case on June 27, 2012.

Response:    Admitted

16.    On July 16, 2012, Plaintiff was duly appointed as Trustee for the Debtor

and has acted in that capacity at all times since.

Response:        Admitted

17.    On September 21, 2012, Lafarge North America, Inc., New NGC, Inc. and Expanded Metal Products Corp. filed an involuntary petition for relief with respect to Northwest Building Material of Illinois, Inc. ("Northwest") under chapter 7 of the Bankruptcy Code withthe Court, commencing the affiliated chapter 7 case bearing case number 12-37478. An Order for Relief was entered in the Northwest case on October 31, 2012.

Response:    Admitted

18.    On November 1, 2012, Plaintiff was duly appointed as trustee for Northwest and has acted in that capacity at all times since.

Response:    Admitted

19.    By order of the Court dated July 24, 2013 [Bankr. Dkt. No. 61], the estates of the Debtor and Northwest were substantively consolidated, and their cases are now jointly administered under Case No. 12-20426.

Response:    Admitted

**B.    <u>Hanson Causes Debtor to Advance Him Millions of Dollars</u>**

20.    Hanson has at all relevant times controlled Debtor and its actions.

Response:    Hanson admits to being the President of the Debtor and the majority shareholder, Hanson denied that he "controlled" the Debtor, and affirmatively asserts that the Debtor's lender and Unions also asserted control over the Debtor.

21.    Beginning in or prior to 2002, and continuing over a period of

numerous years, Hanson caused Debtor to make a series of uncollateralized advances of its monies to Hanson (collectively, the "Advances").

Response:    Denied.

22.    Hanson and Debtor understood and agreed at all relevant times that all Advances would together be treated as a loan from Debtor to Hanson (the "Loan"), rather than as a taxable distribution to Hanson or in any other fashion.

Response:    Denied.

23.    Hanson and Debtor understood and agreed at all relevant times that all amounts due under the Loan, including all principal and interest thereon, would be required to be repaid in full by Hanson upon demand by Debtor.

Response:    Denied

24.    Hanson and Debtor understood and agreed at all relevant times that the Loan would not bear interest for the period prior to January 1, 2002.

Response:    Denied.

25.    Hanson and Debtor understood and agreed at all relevant times that, for all times after January 1, 2002, the Loan would bear interest at the Prime Rate less 0.5%.

Response:    Denied.

26.    Hanson has admitted the existence of his substantial debt to Debtor, including, among other things, admitting in a personal financial statement that he submitted to Suburban Bank & Trust on or about May 31, 2009 that he owed Debtor the sum of $3,313,612 at that time.

Response:      Hanson has no present recollection of submitting a personal financial statement to Suburban Bank & Trust on or about May 31, 2009, and therefore denied. If such a document exists, then the document speaks for itself.

27.    As of December 31, 2010, the outstanding unpaid balance on the Loan, including principal and accrued interest, amounted to at least approximately $3,249,225.37.

Response:      Denied

28.    As of December 31, 2010, the outstanding unpaid Advances amounted to at least approximately $2,470,498.37.

Response:      Denied

29.    As of December 31, 2010, the outstanding accrued and unpaid interest on the Loan amounted to at least approximately $778,727.00.

Response:      Denied

## C.    Debtor's Business Collapses and Fails

30.    Upon information and belief, beginning in or about July 2009, and continuing thereafter, Debtor became unable to pay its bills as they accrued, and in fact did not pay its bills as they accrued.

Response:      At some point in time Hanson admits that the Debtor became unable to pay its bills as they accrued.

31.    Upon information and belief, between approximately July 2009 and approximately February 2011, Debtor ordered and received certain goods (the "NGC Goods") from its creditor, National Gypsum (now known as New NGC, Inc. ("NGC")).

7

Response:    Hanson admits that the Debtor order goods from NGC.

32.    Upon information and belief, Debtor failed to pay some or all of the invoices and/or credit memoranda from NGC for the NGC Goods.

Response:    Hanson admits that the Debtor has not paid NGC for all goods that the Debtor received from NGC.

33.    Upon information and belief, Debtor has at no time paid for the NGC Goods in full.

Response:    Admitted

34.    Upon information and belief, between August 2009 and approximately February 2010, Debtor ordered and received certain goods (the "Continental Goods") from its creditor, LaFarge North America (now known as Continental Building Products LLC ("Continental")).

Response:    Admitted

35.    Upon information and belief, Debtor failed to pay some or all of the invoices from Continental for the Continental Goods.

Response:    Denied

36.    Upon information and belief, Debtor has at no time paid for the Continental Goods in full.

Response:    Denied

37.    Upon information and belief, between June 1, 2010 and November 30, 2011, Debtor failed to pay certain benefit contributions, dues, late fees, audit costs and interest (the "Fund Debt") due and owing to the Laborer's Pension Fund

and Laborer's Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council for Chicago and Vicinity (the "Fund").

Response:     Denied

38.     Upon information and belief, Debtor has at no time paid Fund Debt in full.

Response:     Denied

39.     Upon information and belief, Debtor also failed to pay amounts it owed to numerous other creditors from at least mid-2009 through the present date.

Response:     Admitted as to not paying all debts.

40.     Debtor's lacked sufficient funds to pay its debts as they accrued.

Response:     Admitted that, at a point in time, the Debtor did lack sufficient liquid assets to pay all of its debts in full.

41.     Notwithstanding Debtor's precarious financial situation and its inability to pay its creditors, Hanson at no time caused Debtor to make demand upon Hanson to repay the Loan or any portion of the millions of dollars in Advances.

Response:     Denied

42.     Notwithstanding Debtor's precarious financial situation and its inability to pay its creditors, Hanson at no time repaid the Loan or Advances in full, including interest thereon.

Response:     Denied

9

**D.    Hanson Ignores Plaintiff's Demand for Repayment**

43.    Plaintiff, through her counsel, made written demand upon Hanson on December 17, 2014 to repay the Advances, the Loan, and all interest thereon (the "Demand Letter"). A true and accurate copy of the Demand Letter is attached hereto as Exhibit 1.

Response:    Admitted

44.    As of December 17, 2014, Hanson owed Debtor the aggregate sum of at least approximately $3,530,000.00, representing the sum of at least approximately $2,470,498.37 in unpaid principal and the sum of at least approximately $1,059,501.63 in accrued and unpaid interest.

Response:    Denied

45.    Despite Plaintiff's demand in the Demand Letter, Hanson has failed and refused to make any repayment to Debtor of the Advances, the Loan or the interest thereon as demanded.

Response:    Denied as to the existence of the alleged debt, admitted as to not paying anything to the Trustee.

## COUNT I – BREACH OF CONTRACT

46.    Plaintiff realleges and reincorporates the allegations of Paragraphs 1 through 45 as though fully set forth herein.

Response:    Hanson re-alleges herein his responses to paragraphs 1-45.

47.    Hanson and Debtor at all relevant times had an oral contract pursuant to which Debtor made the Loan to Hanson.

Response:    Denied.

48.    Pursuant to their oral contract, Hanson and Debtor at all times understood and agreed that Hanson would repay all principal and accrued interest under the Loan upon demand by Debtor.

Response:    Denied

49.    Pursuant to their oral contract, Hanson and Debtor at all times understood that the Loan would accrue interest on and after January 1, 2002 at the Prime Rate less 0.5%.

Response:    Denied

50.    Consistent with the parties' oral contract, Debtor made Advances to Hanson in connection with the Loan in the aggregate of at least $2,470,498.37.

Response:    Denied

51.    Upon information and belief, as of December 15, 2014, the outstanding unpaid balance on the Loan amounted to at least approximately $3,530,000.00, representing the sum of at least approximately $2,470,498.37 in unpaid principal and the sum of at least approximately

$1,059,501.63 in accrued and unpaid interest.

Response:    Denied

52.    By letter dated December 17, 2014, Plaintiff, as chapter 7 trustee of Debtor, made written demand upon Hanson for all amounts due under the Loan, including all principal and interest thereon.

Response:    Admitted as to receiving the letter, denied as to the existence of the debt.

53.    Despite such demand, Hanson has failed and refused to pay the amounts due and owing under the Loan as demanded.

Response:    Denied as to the existence of the debt, admitted as to not paying any sum to the Trustee.

54.    Hanson's refusal to repay the full amount of the Loan, including all principal and interest thereon, is a breach of his oral agreement with Debtor.

Response:    Denied

WHEREFORE, the Defendant prays that this Court dismiss Count I of this Complaint.

## COUNT II – PROMISSORY ESTOPPEL

55.    Plaintiff re-alleges and reincorporates the allegations of Paragraphs 1 through 45 as though fully set forth herein.

Response:    Hanson re-alleges his responses to paragraphs 1-45.

56.    Hanson promised Debtor that he would repay any and all Advances made to him by Debtor, including principal and interest, to Debtor upon demand.

Response:    Denied

57.    Hanson promised Debtor that he would pay interest on any and all Advances made to him by Debtor, beginning as of January 1, 2002 and continuing thereafter, at the Prime Rate less 0.5%.

Response:    Denied

58.    In reasonable reliance on Hanson's promises, Debtor made Advances to Hanson in the amount of at least approximately $2,470,498.37.

Response:    Denied

59.    Debtor's reliance on Hanson's promises was reasonable in light of the close relationship between Hanson and Debtor and Debtor's awareness of Hanson's financial ability to repay the Advances and interest thereon.

Response:    Denied as to making any representations.

60.    Debtor's reliance on Hanson's promises was expected and foreseeable, as Hanson accepted millions of dollars of Advances from Debtor and was at all times aware that Debtor expected to be repaid all such Advances and interest thereon.

Response:    Denied

61.    Debtor relied on Hanson's promises to its detriment by making Advances to Hanson in the aggregate amount of at least approximately $2,470,498.37, which sum has not been repaid by Hanson despite his promise.

Response:    Denied

62.    Debtor further relied on Hanson's promises to its detriment by not using the Advances for other purposes and/or opportunities, including, without limitation, paying its legitimate creditors, supporting its failing business, and/or depositing such funds with a financial institution and earning reasonable interest thereon.

Response:    Denied

WHEREFORE, for the foregoing reasons the Defendant prays that this Court dismiss Count II.

## COUNT III – UNJUST ENRICHMENT

63.    Plaintiff realleges and reincorporates the allegations of Paragraphs 1 through 45 as though fully set forth herein.

Response:     Hanson re-alleges his responses to paragraphs 1-45.

64.     Between approximately at least 2000 and 2010, Debtor made Advances to Hanson in the aggregate of at least $2,470,498.37.

Response:     Denied.

65.     At no time did Hanson reject any of the Advances or the benefit thereof.

Response:     Denied as to cash advances being made to Hanson.

66.     Hanson has benefitted substantially from the Advances and his use of millions of dollars of Debtor's monies over the course of more than a decade.

Response:     Denied

67.     Upon information and belief, as of December 17, 2014, Hanson still retains the sum of $2,470,498.37 in Advances from Debtor.

Response:     Denied

68.     Hanson has no legal right to withhold repaying the Advances to Debtor.

Response:     Hanson believe that he has repaid any cash advances that he received, and denies that he has any legal obligation to repay any advances paid to him.

Response:     Denied

69.     Hanson would be unjustly enriched, to Debtor's detriment, if he was permitted to retain the benefit of the Advances without repaying those amounts, together with interest thereon, to Debtor.

Response:     Denied

70.     Hanson's retention of the Advances, and his failure to pay interest to Debtor thereon, violates the fundamental principles of justice, equity and good conscience.

Response:    Denied

WHEREFORE, the Defendant prays that this Court dismiss Count III of Plaintiff's

complaint.


### COUNT IV
### ACCOUNT
### STATED

71.    Plaintiff realleges and reincorporates the allegations of Paragraphs 1

through 45 as though fully set forth herein.

Response:    Hanson re-alleges his responses to paragraphs 1-45.

72.    Between approximately at least 2000 and 2010, Debtor made the

Advances to Hanson pursuant to the Loan.

Response:    Denied

73.    Hanson and Debtor at all times understood and agreed that Hanson

would repay all principal and accrued interest under the Loan upon demand by Debtor.

Response:    Denied

74.    Upon information and belief, in or about early 2009, Debtor's

accountant, Miller Cooper & Co., Ltd., on Debtor's behalf, rendered to Hanson a

"Consolidated Financial Statements and Independent Accountants' Report –

December 31, 2008 and 2007" (the "Financial Report").

Response:    Hanson is not the author of the referenced Consolidated Financial

Statement, and therefore has no knowledge as to its accuracy. Further, Hanson denies

that the referenced document was rendered to Hanson.

75.    Among other things, the Financial Report provided an accounting that:

> The Companies and Affiliates have uncollateralized advances to a stockholder of $3,325,153 and $3,313,612 as of December 31, 2008 and 2007, respectively. Effective January 1, 2002, the advances bear interest at the prime rate (3.25% at December 31, 2008) minus 0.5%. The note was noninterest-bearing prior to 2002. Principal and interest are due on demand.

Response:    Hanson is not the author of the referenced document and therefore has no knowledge as to its accuracy, and therefore denies the accuracy of the document. Hanson has no knowledge as to the existence of any "note", and denies that any "note" exists. As the referenced document is not attached to the pleading, and Hanson does not have a copy of the referenced document, Hanson is unable to admit that paragraph 75 is an accurate quotation of the contents of the referenced document.

76.    Upon information and belief, the stockholder advances referred to in the Financial Report were the Advances.

Response:    Denied as to there being cash advances. Unknown whether the references exist, whether the references are accurate, and therefore denied.

77.    Upon information and belief, Hanson received the Financial Report, including, without limitation, the accounting therein that, as of December 31, 2007, he had a debt to Debtor in the amount of $3,313,612 in connection with the Advances and interest thereon.

Response:    Denied

78.    Upon information and belief, Hanson retained the Financial Report and has at no time made any objection thereto, or to the amount of his debt to Debtor in

connection with the Advances and interest thereon stated therein, in whole or in part.

Response:      Hanson denies that he has retained the Financial Report, and denies that

he is indebted to the Debtor.

79.    To the contrary, Hanson agreed with and admitted this $3,313,612 debt to

Debtor.

Response:      Denied

80.    In a Personal Financial Statement submitted by Hanson to

Suburban Bank & Trust and signed by Hanson as of May 31, 2009 (the "Hanson

Financial Statement"), Hanson explicitly admitted that he had a "current note payable"

to Debtor in the amount of "$3,313,612."

Response:    Hanson has no personal recollection of submitting a personal financial

statement to Suburban Bank & Trust in 2009, and, if one exists, Hanson is unaware of

its contents. If the financial statement exists, then as a legal document it speaks for

itself.

81.    Hanson's retention of the Financial Report beyond a reasonable time,

his failure to object thereto, and his admission of his debt in the Hanson Financial

Statement constitute an acknowledgement and recognition of the correctness thereof.

Response:      Denied

82.    Notwithstanding Hanson's acknowledgement and recognition of the

correctness of the accounting of his debt to Debtor in the Financial Report, Hanson has

paid no portion of the sums that he has acknowledged that he owes Debtor.

Response:       Denied

WHEREFORE, for the foregoing reasons the Defendant prays that this Court dismiss Count IV of Plaintiff's complaint.

### COUNT V - CONVERSION

83.    Plaintiff realleges and reincorporates the allegations of Paragraphs 1 through 45 as though fully set forth herein.

Response:       Hanson re-alleges his responses to paragraphs 1-45.

84.    Between at least 2002 and 2010, Debtor made Advances to Hanson in the aggregate of at least $2,470,498.37.

Response:       Denied.


85.    The Advances were at all times, and remain, Debtor's property.

Response:       Denied

86.    At all relevant times, Hanson and Debtor understood that all of the Advances belonged to Debtor, and that Hanson would be required to repay the Advances to Debtor upon demand by Debtor.

Response:       Denied

87.    By letter dated December 17, 2014, Plaintiff, as chapter 7 trustee of Debtor, made written demand upon Hanson for repayment of all Advances, in the sum of $2,470,498.37, plus interest thereon as previously agreed by Debtor and Hanson.

Response:       Admitted as to the letter being sent, denied as to any debt being owed.

88.    Debtor has at all times had a right to immediate possession of the Advances upon and following the time of its December 17, 2014 demand.

Response:    Denied

89.    Despite such demand, Hanson has failed and refused to pay any portion of the$2,470,498.37 in Advances that are due and owing, or any portion of the accrued interest thereon.

Response:    Denied as to any amounts being due and owing.

90.    Hanson's refusal to repay the Advances to Debtor upon demand amounts to an unauthorized and wrongful assumption of control, dominion or ownership by Hanson over the Advances.

Response:    Denied

91.    Hanson has improperly converted the Advances.

Response:    Denied

WHEREFORE, the Defendant prays that this Court dismiss Count V.

## COUNT VI
### BREACH OF
### FIDUCIARY DUTY

92.    Plaintiff realleges and reincorporates the allegations of Paragraphs 1 through 45 as though fully set forth herein.

Response:    Hanson re-alleges his responses to paragraphs 1-45.

93.    At all relevant times, including from at least 2002 through the present date, Hanson has owed and continues to owe fiduciary duties to Debtor due to his control of Debtor.

19

Response:      Paragraph 93 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

94.      At all relevant times, including from at least 2002 through the present

date, Hanson has owed and continues to owe fiduciary duties to Debtor as its President.

Response:      Paragraph 94 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

95.      At all relevant times, including from at least 2002 through the present

date, Hanson has owed and continues to owe fiduciary duties to Debtor as its sole

and/or majority owner.

Response:      Paragraph 95 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

96.      Hanson has at all relevant times had a fiduciary duty of loyalty to
         Debtor.

Response:      Paragraph 96 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

97.      Hanson has at all relevant times had a fiduciary duty of care to Debtor.

Response:      Paragraph 97 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

98.      Hanson has at all relevant times had a fiduciary duty of good faith to
         Debtor.

Response:      Paragraph 98 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

99.      Hanson  has  at  all  relevant  times  had  a  fiduciary  duty  not  to

misappropriate the assets of Debtor.

Response:    Paragraph 99 alleges a legal conclusion, and as such is an improper

allegation, which Hanson therefore denies.

100.    Hanson breached his fiduciary duties to Debtor, including, without

limitation, his duty of loyalty to Debtor, his duty of care, his duty of good faith, and his

duty not to misappropriate corporate assets, by causing or allowing Debtor to make the

Advances.

Response:    Denied

101.    The Advances were not in the best interests of Debtor.

Response:    Denied

102.    The Advances were not made in good faith.

Response:    Denied

103.    Hanson had a conflict of interest in causing or allowing Debtor to

make the Advances to himself.

Response:    Denied

104.    The Advances were a misappropriation of Debtor's assets by Hanson.

Response:    Denied

105.    Hanson's decision to cause and/or allow Debtor to make the Advances

was grossly negligent and reckless.

Response:    Denied

106.    Hanson breached his fiduciary duties to Debtor, including, without

limitation, his duty of loyalty to Debtor, his duty of care, his duty of good faith, and his

duty not to misappropriate corporate assets, by not causing Debtor to demand

repayment of the Advances.

Response:       Denied

107.    Hanson's failure to cause Debtor to demand repayment of the Advances was not in the best interests of Debtor.

Response:       Denied

108.    Hanson's failure to cause Debtor to demand repayment of the Advances was not in good faith.

Response:       Denied

109.    Hanson had a conflict of interest in failing to cause Debtor to demand repayment of the Advances.

Response:       Denied

110.    Hanson's failure to cause Debtor to demand repayment of the Advances amounted to a misappropriation of Debtor's assets by Hanson.

Response:       Denied

111.    Hanson's failure to cause Debtor to demand repayment of the Advances was grossly negligent and reckless.

Response:       Denied

112.    Hanson breached his fiduciary duties to Debtor by using Debtor's property, in the form of the Advances, for his own personal gain.

Response:       Denied

113.    Hanson breached his fiduciary duties to Debtor, including, without limitation, his duty of loyalty to Debtor, his duty of care, his duty of good faith, and his duty not to misappropriate corporate assets, by not repaying the Advances to Debtor.

Response:    Denied

114.    Hanson's failure to repay the Advances was not in the best interests of Debtor.

Response:    Denied

115.    Hanson's failure to repay the Advances was not in good faith.

Response:    Denied

116.    Hanson had a conflict of interest in failing to repay the Advances.

Response:    Denied

117.    Hanson's failure to repay the Advances amounted to a misappropriation of Debtor's assets by Hanson.

Response:    Denied

118.    Hanson's failure to repay the Advances was grossly negligent and reckless.

Response:    Denied

119.    Hanson's breaches of his fiduciary duties to Debtor were willful and wonton, intentional, and gross violations of his fiduciary duties.

Response:    Denied

120.    As a result of Hanson's breaches of fiduciary duties, Debtor was deprived of at least approximately $2,470,498.37 of its property.

Response:    Denied

121.    As a result of Hanson's breaches of fiduciary duties, Debtor was deprived of the opportunity to use at least approximately $2,470,498.37 in connection with its business and/or for investment.

Response:    Denied

122.    As a result of Hanson's breaches of fiduciary duties, Debtor became unable to pay its debts and other obligations as they came due.

Response:      Denied

123.    As a result of Hanson's breaches of his fiduciary duties, Debtor became insolvent.

Response:      Denied

124.    As a result of Hanson's breaches of his fiduciary duties, Debtor failed to pay amounts due to numerous of its creditors, and several of those creditors initiated the instant Bankruptcy Case by way of their involuntary petition herein.

Response:      Denied

125.    As a result of Hanson's breaches of his fiduciary duties, Debtor has been unable to pay any portion of the $4,580,416.38 in claims filed with respect to Debtor in this Bankruptcy Case.

Response:      Denied

WHEREFORE, the Defendant prays that this Court dismiss Count VI of Plaintiff's complaint.

## COUNT VII - TURNOVER

126.    Plaintiff realleges and reincorporates the allegations of Paragraphs 1 through 45 as though fully set forth herein.

Response:      Hanson re-alleges his response to paragraphs 1-45.

127.    The Advances belong to Debtor and are property of the Estate.

Response:      Denied

24

128. Accrued interest on the Advances belongs to Debtor and is property of the Estate.

Response:    Denied

129. Demand has been made of Hanson and Hanson has refused to return Debtor's property, including, without limitation, the Advances and the accrued interest thereon.

Response:    Admitted as to the demand, denied as to a debt being owed.

130. Pursuant to 11 U.S.C. § 542, Hanson must turnover to Debtor its property, including, without limitation, the Advances and the accrued interest thereon.

Response:    Denied

WHEREFORE, the Defendant prays the this Court dismiss Count VII of Plaintiff's complaint.

## AFFIRMATIVE DEFENSES APPLICABLE TO ALL COUNTS

Affirmative Defense #1: Counts I through VII are barred by the failure to sue under each count within the applicable statute of limitations for each Count.

Affirmative Defense #2: Counts I through VII are barred by the Statute of Frauds, 740 ILCS 80/1.

Affirmative Defense #3: Counts I through VII are barred as the Plaintiff lacks standing to sue.

Affirmative Defense #4: Counts I through VII are barred by the doctrine of estoppel.

Affirmative Defense #5: Counts I through VII are barred as the Debtor has waived any claims for un-repaid cash advances to Hanson.

Respectfully Submitted

25

Charles Hanson

By: _____
     EMALFARB, SWAN & BAIN
     His Attorneys

Peter G. Swan
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, Illinois 60035
(847) 432-6900
Attorney # 6186883

## VERIFICATION

Under penalties of perjury as provided by law, and under the Power of Attorney granted to me by my father, Charles Hanson, the undersigned certified that the statements set forth in this instrument are true and correct, except as to matters herein stated to be on information and belief, and as to such matter, the undersigned certifies as aforesaid that she verily believes the same to be true.

Dated: March 5, 2015

_Km Henry_
Katherine Henry